**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LASHON STUCKEY** | **CIVIL ACTION** |
| | **SECTION(S):** |
| **VERSUS** | **JUDGE** |
| | **MAGISTRATE JUDGE** |
| **UNITED STATES OF AMERICA** | **JURY DEMAND** |

**PETITION FOR DAMAGES**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, **LASHON STUCKEY ("PETITIONER")** who respectfully represents as follows:

**PRELIMINARY STATEMENT**

**PETITIONER** brings this action for damages under the Federal Tort Claims Act ("FTCA"), pursuant to 28 U.S.C. § 2671, relative to personal injuries sustained as a result of institutional gross negligence and lack of medical care while in the care and custody of FCI Pollock in Grant Parish, Louisiana located at 1000 Airbase Road, Pollock, LA 71467.

**JURISDICTION & VENUE**

Jurisdiction is proper in the United States District Court for the Western District of Louisiana, pursuant to 28 U.S.C. §§ 1331, 1346(b), and 2671-80. Venue is proper in the United States District Court for the Western District of Louisiana, under 28 U.S.C. § 1402(b), as the acts or omissions which form the basis of **PETITIONER's** claims occurred within the Alexandria Division for the Western District of Louisiana, while **PETITIONER** was incarcerated at FCI Pollock situated in Grant Parish, Louisiana with a municipal address of 1000 Airbase Road, Pollock, LA 71467.

**Page 1 of 8**

**PETITIONER** has timely and fully complied with the administrative procedures, including but not limited to, presenting an administrative claim to the Federal Bureau of Prison as required by 28 U.S.C. § 2675(a). **PETITIONER's** claims dated April 18, 2024, were timely received by the U.S. Department of Justice, Federal Bureau of Prisons South Central Regional Office on April 26, 2024.[1] Once received, it was indicated that a timely response could be expected from the regional office on or before October 23, 2024, which is six (6) months after the claim was filed.[2] On or about October 29, 2024, additional correspondence from the Federal Bureau of Prisons South Central Regional Office was received indicating **PETITIONER's** claims were still being investigated.[3]

This action was commenced after six (6) months of the PETITIONER's claim being filed with the Federal Bureau of Prisons South Central Regional Office, and no denial of claims has been rendered or received. Accordingly, the lack of any decision of a denial of the claim constitutes a denial, as per 28 U.S.C. § 2675. **PETITIONER** has therefore complied with all statutory jurisdictional requirements and conditions precedent to commencement and prosecution of this litigation.

## PARTIES

1. **PETITIONER** herein, **LASHON STUCKEY**, is of suitable age and capacity to file this lawsuit. At all times relevant herein, **PETITIONER** was incarcerated and under the custodial, supervisory, and disciplinary authority of FCI Pollock in Grant Parish, Louisiana located at 1000 Airbase Road, Pollock, LA 71467.

---

[1] Exhibit P-1: FTCA Claim on behalf of Lashon Stuckey, dated April 18, 2024
[2] Exhibit P-2: BOP Receipt of FTCA Claim, dated April 26, 2024
[3] Exhibit P-3: BOP Notice Investigation Ongoing, dated October 29, 2024

2. **UNITED STATES OF AMERICA ("DEFENDANTS")** is being sued herein for personal injuries to **PETITIONER** caused by the wrongful or negligent acts or omissions of **DEFENDANTS** agents or employees, who were acting within the course and scope of their employment under circumstances where the United States of America, if a private person, would be liable to **PETITIONER** in accordance with 28 U.S.C. § 1346(b).

## STATEMENT OF FACTS

1. At all relevant times herein, **PETITIONER** was incarcerated and under the custodial, supervisory, and disciplinary authority of FCI Pollock in Grant Parish, Louisiana located at 1000 Airbase Road, Pollock, LA 71467.

2. On or about March 17, 2023, **PETITIONER** was transferred to FCI Pollock and seen by medical staff for a routine intake assessment. During this medical intake it was discovered that Petitioner was in need of, and fact had already been approved of, a "lower bunk pass" due to seizures caused by **PETITIONER's** epilepsy diagnosis.[4]

3. Upon information and belief, this "lower bunk pass" was first ordered and approved on or about August 26, 2022, before **PETITIONER** was transferred to FCI Pollock, and set to expire on or about August 25, 2023.[5] On or about February 18, 2023, the expiration of this "lower bunk pass" was extended to February 18, 2024.[6] On March 17, 2023 (the day **PETITIONER** was transferred to FCI Pollock) Efrain Padilla, M.D. extended the expiration of the lower bunk necessity to March 29, 2024, due to **PETITIONER's** seizures.[7]

---

[4] Exhibit P-8: Medical Order for Low Bunk Pass, dated March 17, 2023
[5] Exhibit P-5: Medical Status Notice(s)
[6] Exhibit P-5: Medical Status Notice(s)
[7] Exhibit P-5: Medical Status Notice(s)

4.  This well documented medical impairment put FCI Pollock on more than enough notice that **PETITIONER** was reasonably accommodated by being assigned to a lower bunk. However, **PETITIONER** was still assigned to a top bunk, placing him at significant risk for injury. Prison staff was aware of **PETITIONER's** condition and the explicit medical directive(s) requiring a lower bunk for medical reasons. Nonetheless, prison staff willfully failed to accommodate **PETITIONER's** necessary medical accommodation.

5.  **PETITIONER** repeatedly informed both correctional and administrative staff at FCI Pollock that it was well known he had an approved "lower bunk pass," which was valid until March 29, 2024. However, prison staff disregarded this medical directive and insisted that no bottom bunks were available, leaving **PETITIONER** with no choice but to remain in a top bunk.

6.  **PETITIONER** filed a formal complaint against the staff member(s) who ignored his medical restriction, but this complaint was disregarded.[8] All of **PETITIONER's** efforts to reasonably request reassignment to a lower bunk were disregarded, and FCI Pollock failed to move him despite his medical needs.

7.  On May 3, 2023, while sleeping in his top bunk, **PETITIONER** experienced a seizure and fell, resulting in severe damage to his head and neck. **PETITIONER** was required to undergo multiple surgeries, inevitably leading to permanent limitations in his overall mobility.[9]

8.  Following the injury, **PETITIONER** continued to suffer from severe neck pain, exacerbated by further negligence at both FCI Pollock and FCI Gilmer, where he was later transferred.

---

[8] Exhibit P-4: Administrative Remedy Exhaustion
[9] Exhibit P-6: OLGH Operative Notes

9. Due to the extreme lack of medical care, **PETITIONER** now suffers from chronic head, shoulder, neck, and back pain, as well as cervical and neurological injuries. To this day, he has been denied adequate medical treatment, which has only exacerbated his injuries and began causing mental anguish.

10. **PETITIONER** has suffered and continues to suffer severe and long-term physical and emotional harm. In addition to ongoing physical pain, **PETITIONER** endured significant emotional distress, particularly after his complaints regarding staff negligence were ignored. Despite filing numerous grievances concerning his lack of medical care, he was met with retaliation. This prolonged stress led to a mental breakdown and a suicide attempt due to severe emotional anguish.

## CAUSES OF ACTION

**Count One:    Governmental Medical Negligence Claims under the Federal Tort Claims Act ("FTCA"), pursuant to 28 U.S.C. § 2671.**

11. **PETITIONER** incorporate and reasserts the allegations in the paragraphs above as though fully set forth herein.

12. FCI Pollock staff owed a duty to **PETITIONER** and other similarly situated prisoners to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to also "provide for the protection, … of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2-3). In other words, the duty of care owed by the Bureau of Prisons to inmates requires "the exercise of ordinary diligence to keep prisoners safe and free from harm." *Cowart v. United States*, 617 F.2d 112, 116 (5th Cir. 1980).

13. The prison staff at FCI Pollock had a policy, custom, and practice requiring them to follow medical directives issued by its medical team, such as ensuring that inmates with a "low

bunk pass" were assigned to a lower bunk, rather than a top bunk. This policy, custom, and practice restricted FCI Pollock prison staff from using their discretion in assigning **PETITIONER** to a top bunk. By failing to place **PETITIONER** in a lower bunk, as medically ordered by their own medical staff, FCI Pollock prison staff violated their established policy, custom, and practice. These actions disregarded **PETITIONER's** constitutional rights under the 8th Amendment, constituted willful misconduct, and demonstrated gross negligence.

14. FCI Pollock breached its duty owed to **PETITIONER** by failing to recognize his well-documented medical impairments, granting him reasonable and necessary medical accommodations, preventing **PETITIONER** access to necessary medication and further preventing him access to vital medical services. FCI Pollock was more than aware that **PETITIONER** had medical directives requiring prison staff to assign him to a lower bunk. FCI Pollock engaged in willful misconduct by failing to exercise ordinary, reasonable care in providing **PETITIONER** the reasonable accommodation medical staff ordered.

15. As a direct and proximate result of the denial of medical care and failure to give an upper bunk as directed, **PETITIONER** sustained severe injuries to his spine, after having a seizure which foreseeably resulted in **PETITIONER** falling from the top bunk he should have never been assigned in the first place.

16. After being initially transported to Rapides Regional Medical Center for his injuries, **PETITIONER** was quickly transported to Ochsner Lafayette General Hospital. An MRI of the cervical spine revealed a fracture in the C1 vertebra, as well as in the T1 and T2 vertebrae.[10]

---

[10] Exhibit P-7: OLGH Admission Information

17. On May 3, 2023, **PETITIONER** underwent a surgical fusion of the cervical spine.[11] **PETITIONER** underwent surgery for a second time on May 8, 2023, for a cerebral angiogram in order to check for blockages, aneurysms, or other blood flow issues in the brain that could have been caused by **PETITIONER** falling from the top bunk.[12] On or about May 10, 2023, **PETITIONER** underwent a third surgery to further treat his injuries and reduce the risk of any further neurological conditions such as an aneurysm, arteriovenous malformation, or abnormal bleeding.[13]

18. On or about May 31, 2023, **PETITIONER** was discharged from Ochsner Lafayette General Hospital and transferred to Riverside Hospital for in-patient rehabilitation, where he remained until on or about August 3, 2023.[14]

19. **DEFENDANT**, the United States of America, is liable for these tortious acts under the Federal Tort Claims Act as they were committed by federal agents or employees of **DEFENDANT** who were acting within the scope of their employment, under circumstances where **DEFENDANT**, if a private person, would be liable to **PETITIONER** in accordance with law.

## DESIGANTION OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that the undersigned counsel, Glenn C. McGovern (LA Bar Roll No. 9321), Andrew A. Maberry (LA Bar Roll No. 38825) and Callan C. Johns (LA Bar Roll No. 38788) are hereby designated as trial counsel for **PETITIONER** in the above captioned litigation.

## PRAYER FOR RELIEF

---

[11] Exhibit P-6: OLGH Operative Notes
[12] Exhibit P-6: OLGH Operative Notes
[13] Exhibit P-6: OLGH Operative Notes
[14] Exhibit – Riverside Hospital Inc. Medical Records

**WHEREFORE**, **PETITIONER,** Lashon Stuckey, prays that after due proceedings are had, that there be judgment in his favor and against **DEFENDANT**, as follows:

a)  Compensatory Damages;

b)  Past, Present and Future Pain and Suffering;

c)  Past, Present and Future Mental Anguish;

d)  Past, Present and Future Medical Expenses;

e)  Loss of Enjoyment of Life;

f)  Permanent injury due to cervical fractures and fusions;

g)  Loss of mobility due to cervical fractures and disability;

h)  Reasonable attorney's fees and all costs of these proceedings

i)  All other relief this which this Honorable Court may deem just and proper.

**PETITIONER** further reserves his right to notice of defect to this Complaint and reserves the right to amend or supplement this Complaint after discovery of any additional fact, law, or claim, the amendment of which to be performed by the filing of any subsequent pleading.

Respectfully Submitted:
**The Law Office of Glenn C. McGovern**

*/s/ Glenn C. McGovern*
Glenn C. McGovern (Bar# 9321)
Callan J. Johns (Bar# 38788)
Andrew Maberry (Bar# 38825)
2901 Division Street, Suite 201
Metairie, LA 70002
Phone: (504)456-3610
Fax: (504)456-3611
E-mail: glenn@glennmcgovern.com
*Attorneys for Plaintiff*